**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
Jeffrey M. Rosenfeld (Bar No. 222187)
Leah Rosa Vulic (Bar No. 343520)
548 Market St. #85399
San Francisco, CA 94104
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@kr.law
jeff@kr.law
leah@kr.law

Attorneys for Movants/Defendants Does

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

**IN RE. SUBPOENAS TO REDDIT, INC. AND DISCORD, INC.**

Case No. 3:25-mc-80296-SK

(Case No. 2:25-cv-05564-WLH-PD, Pending in Central District of California)

**MOVANTS DOE DEFENDANTS' REPLY IN SUPPORT MOTION TO QUASH PLAINTIFF'S SUBPOENAS TO REDDIT, INC. AND DISCORD, INC.**

Date:     TBD
Time:     TBD
Ctrm:     Courtroom C – 15th Floor
Before:   Hon. Sallie Kim

**REPLY ISO DOES' MTN TO QUASH SUBPOENAS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 1

    A.    Evidentiary Objections ............................................................................... 1

    B.    The nature of Does' speech implicates the First Amendment ..................... 2

    C.    TEI presents no evidence of a prima facie claim for contributory infringement ........... 3

        1. TEI presents no evidence that Does knew of specific infringement .......................... 4

        2. TEI presents no evidence that Does induced Denims' alleged infringement ............. 7

    D.    Does made a fair use of TEI's Works ......................................................... 9

    E.    Denims made a fair use of TEI's Works ...................................................... 9

    F.    The balancing of factors weighs in favor of Does ....................................... 10

    G.    TEI has not established that its Subpoenas seek relevant information ......................... 13

    H.    TEI did not significantly narrow the scope of the Subpoenas ..................... 13

    I.    In the alternative, a protective order is warranted ....................................... 14

    J.    Does' attorney's fees are warranted ............................................................ 15

CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple, Inc. v. Samsung Elecs. Co.*,
  2012 WL 2576136 (N.D. Cal. July 3, 2012) ................................................................. 2

*Art of Living Found. v. Does 1-10*,
  2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) ...................................................... 14, 15

*Awtry v. Glassdoor, Inc.*,
  2016 WL 1275566 (N.D. Cal. Apr. 1, 2016) .................................................................. 7

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ........................................................................................................ 9

*Cognosphere Pte. Ltd. v. X Corp.*,
  2024 WL 4227594 (N.D. Cal. Sept. 18, 2024) ........................................................... 11

*Columbia Pictures Indus., Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) ....................................................................................... 7

*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
  809 F.3d 1092 (9th Cir. 2016) ............................................................................... 14, 15

*Doe 1 v. GitHub, Inc.*,
  672 F. Supp. 3d 837 (N.D. Cal. 2023) ................................................................... 14, 15

*Does I thru XXIII v. Advanced Textile Corp.*,
  214 F.3d 1058 (9th Cir. 2000) ............................................................................... 14, 15

*Highfields Cap. Mgmt., L.P. v. Doe*,
  385 F. Supp. 2d 969 (N.D. Cal. 2005) ........................................................................... 3

*Highfields Cap. Mgmt., L.P. v. Doe*,
  2005 WL 8188026 (N.D. Cal. May 31, 2005) ............................................................. 15

*In re DMCA Subpoena to Reddit, Inc.*,
  441 F. Supp. 3d 875 (N.D. Cal. 2020) ...................................................................... 3, 9

KRONENBERGER ROSENFELD

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*,

608 F. Supp. 3d 868 (N.D. Cal. 2022) ....................................................................... 3

*In re McClatchy Newspapers, Inc.*,

288 F.3d 369 (9th Cir. 2002) ................................................................................... 15

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,

658 F.3d 936 (9th Cir. 2011) ..................................................................................... 8

*Luvdarts, LLC v. AT & T Mobility, LLC*,

710 F.3d 1068 (9th Cir. 2013) ................................................................................... 4

*Ma v. Twitter, Inc.*,

2024 WL 3086694 (N.D. Cal. Apr. 22, 2024) ........................................................... 2

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,

545 U.S. 913 (2005) .................................................................................................. 7

*Murphy v. Spennato*,

2013 WL 12130006 (C.D. Cal. June 24, 2013) ......................................................... 2

*Music Grp. Macao Com. Offshore Ltd. v. Does*,

82 F. Supp. 3d 979 (N.D. Cal. 2015) ................................................................. 3, 11

*Nat'l Fire Prot. Ass'n, Inc. v. UpCodes, Inc.*,

753 F. Supp. 3d 933 (C.D. Cal. 2024) ..................................................................... 10

*Perfect 10, Inc. v. Giganews, Inc.*,

847 F.3d 657 (9th Cir. 2017) ..................................................................................... 8

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,

494 F.3d 788 (9th Cir. 2007) ..................................................................................... 8

*Robinson v. Binello*,

771 F. Supp. 3d 1114 (N.D. Cal. 2025) ..................................................................... 5

*Seltzer v. Green Day, Inc.*,

725 F.3d 1170 (9th Cir. 2013) ................................................................................. 10

*Splunk Inc. v. Cribl, Inc.*,

662 F. Supp. 3d 1029 (N.D. Cal. 2023) ..................................................................... 7

KRONENBERGER ROSENFELD

*Tarantino v. Gawker Media, LLC,*

2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) ................................................................. 8

*VHT, Inc. v. Zillow Grp., Inc.,*

918 F.3d 723 ................................................................................................................. 7, 8


**Statutes**

18 U.S.C. §2701 ................................................................................................................. 14


**Rules**

Civil Local Rule 7-5 .......................................................................................................... 2

Fed. R. Civ. P. 11 ............................................................................................................. 15

Fed. R. Civ. P. 56 ............................................................................................................... 2

Fed. R. Evid. 402 ............................................................................................................... 2

Fed. R. Evid. 403 ............................................................................................................... 2

Fed. R. Evid. 601 ............................................................................................................... 2

Fed. R. Evid. 602 ............................................................................................................... 2

Fed. R. Evid. 701 ............................................................................................................... 2

Fed. R. Evid. 802 ............................................................................................................... 2

Fed. R. Evid. 803(1), (3), (21) .......................................................................................... 2

Fed. R. Evid. 901 ............................................................................................................... 2

Fed. R. Evid. 1002-1003 ................................................................................................... 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRONENBERGER ROSENFELD

**INTRODUCTION**

TEI[1] devotes most of its Opposition to Does' Motion to Quash ("Opp.") to addressing fair use. But first and foremost, TEI must establish whether it can state a claim for contributory infringement against Does. It cannot.

Instead, TEI's hundreds of pages of declarations and exhibits show that this case—and TEI's Subpoenas—encompass much more than a copyright dispute. TEI's principals, Ethan and Hila Klein, see themselves as being cyber-attacked on personal and political levels. Even though the Kleins have shown *no evidence* of an actual H3Snark moderator engaging in any such conduct, they accuse Does of being responsible. More importantly, TEI introduces *no evidence* of infringement by Does; TEI merely relies on unfounded speculation and assumptions.

Fundamentally, TEI conflates users of the H3Snark Subreddit, and really any critics with a "snark" mentality, and attributes their conduct collectively to Does. Furthermore, TEI repeatedly attributes conduct to Does which is neither relevant to copyright infringement, nor actually done by Does. Indeed, when given the opportunity and the *obligation* to produce evidence of its copyright claim, TEI spends its declarations "correct[ing] the record" for perceived wrongs and alleged falsehoods. As TEI's own evidence shows, TEI has an ulterior, reputational motive, unrelated to copyright. Relatedly, TEI has not established that its Subpoenas seek relevant information for moderators of the Subreddit. Finally, the balancing of equities overwhelmingly favors Does' and the public's right to free speech, anonymity, and privacy, where TEI set a trap and is weaponizing the Subpoenas to reveal Does' identities to punish them for conduct they simply did not do. TEI should not be rewarded.

**ARGUMENT**

**A.    Evidentiary Objections**

<u>Response to TEI Objections</u>: In a footnote, TEI objects to Does' citations to "Reddit posts and other materials authored by third parties" as hearsay, lacking personal knowledge, foundation, and proper authentication, and under the best evidence rule for any clips part of those posts. (Opp.

---

[1] References to TEI herein encompass Ethan and Hila Klein and the H3 podcast and brand. References to Ethan or Hila Klein by their first name only are for ease and not meant to disrespect.

KRONENBERGER ROSENFELD

at 2:24-25.) While TEI's objections lack sufficient specificity for Does to respond, Does state that their evidence is based on personal knowledge unless so stated. Does provided authentication for their non-testimonial exhibits. (*See* Vulić Decl. *passim*, D.E. 7.) Moreover, the evidence is relevant to the Does' present sense impression and existing mental state. FRE 803(1), (3), (21).

Does' Objections: **1)** Does object to arguments in footnotes and in TEI's declarations (instead of its brief) as improper, and attempts to circumvent the Court's page limits. *See Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 2576136, at *4 (N.D. Cal. July 3, 2012); *Murphy v. Spennato*, 2013 WL 12130006, at *3 (C.D. Cal. June 24, 2013); *Ma v. Twitter, Inc.*, 2024 WL 3086694, at *3 (N.D. Cal. Apr. 22, 2024). **2)** Does object to chat logs, social media posts, and anonymous statements (Exs. 49-53, 57-58, 61, 70) as hearsay under FRE 802 lacking exception. **3)** Does object to Exs. 49-53, 57-58, 61, 70, 75 under FRE 901 and/or FRE 1002-1003 as unauthenticated and/or the evidence speaks for itself. **4)** Does object to portions of JKD and RBM Decl. that offer legal conclusions (JKD ¶26; RBN Decl. ¶¶6, 7, 9, 10, 12, 15-19, 25, 29, 32-33, 43-45, 48, 50-54, 56, Exs. 54-56, 59), speculation (including about user motivations or alleged market harm) (JKD ¶¶20, 21, 23-24, 32, 38, 39, 40, 43-56, 58-75, 93-94; RBN Decl. ¶¶12, 20, 22-23, 25, 29, 31-32, 39.c, 42, 44-45, 46, 48-49, 50-56, Exs. 52-53, 57-58, 61), and improper character evidence about Does or others (JKD ¶¶23, 24, 36, 38, 39, 40, 43-56, 70; RBN Decl. ¶¶31; Exs. 52, 61), under FRE 601, 602, 701, L.R. 7-5, and FRCP 56 (JKD ¶¶20, 21; RBN Decl. ¶¶11, 20, 22, 31, 44, 45, 46, Exs. 49, 50-53, 61, 70), as declarants lack personal knowledge. **5)** Does object to inflammatory rhetoric or alleged instances of harassment unrelated to copyright claims (JKD ¶¶23, 24, 36, 43-75, 93-94; RBN Decl. ¶¶20, 31, Exs. 52, 61) under FRE 402 for relevance, and FRE 403 for undue prejudice, confusion of the issues, and risk of misleading. Does ask that objectionable materials be stricken. L.R. 7-5. Further, Does object to TEI's evidence which is self-contradictory; this evidence should also not be considered.

**B.    The nature of Does' speech implicates the First Amendment.**

Does' actions in creating Megathreads as discussion boards to analyze, critique, and deliberate TEI's *Nuke*[2] involve Does' First Amendment rights to anonymous speech. *Nuke* is a

---

[2] It is worth noting that TEI admits in its Opposition that, from its inception, *Nuke* was designed and targeted as a response to the Kleins' [misguided] perception of the H3Snark Subreddit. (Opp. at 6:20-24.) As such, Does have not only a First Amendment, but reputational privilege to critique it.

2

"tragi-comic documentary critiquing" a political commentator/Ethan's adversary (Hasan) and an influential, interactive live-streaming platform shaping social and political discourse (Twitch). Does' speech is core protected speech. *See In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 878 (N.D. Cal. 2022) (a speaker's interest in anonymity may extend beyond alleged copyright infringement where the speaker criticizes a powerful political figure); *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 974-75 (N.D. Cal. 2005) ("*Highfields*"); *Music Grp. Macao Com. Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 983 (N.D. Cal. 2015). In other words, here, the First Amendment implications go beyond the fair use of the Megathreads because the purpose of the Megathreads was to promote commentary and criticism. Thus, First Amendment concerns must be considered, separate and before a consideration of fair use.

Here, expressing criticism of a public figure of Ethan Klein's particular persona and online following, while using one's real name, *will lead* to dire consequences. It is in this context, of high public sentiment, that TEI's claim and Subpoenas must be judged. Therefore, to succeed in unmasking Does, TEI must persuade the Court that there is a real evidentiary basis for believing that Does engaged in wrongful conduct that caused real harm to TEI's interests that the laws TEI invokes—here, copyright laws—are intended to protect. *See Highfields* at 975. Vague explanations, conclusory suggestions, and outcome-determinative unsupported claims are not sufficient. *See In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 880-81 and n. 4; *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 885 (N.D. Cal. 2020). TEI has not made this showing.

**C.    TEI presents no evidence of a prima facie claim for contributory infringement.**

TEI has not submitted competent evidence for its claim for contributory copyright infringement or alleged harm. Does, in routine Reddit moderation practice of creating pinned posts, shared links to content creators who live-streamed reaction videos of TEI's *Nuke*. Reaction videos— i.e., analysis of another creator's videos, in a content creator's own video, is so commonplace the industry that it's often difficult to tell where one creator's content begins and another's ends. (Does Reply Declaration ("DRD") ¶10.)  Does had no knowledge of any alleged infringement, and they in no way induced Denims' (or other creators') alleged infringement; the creators would have reacted to *Nuke* regardless of what Does posted on the Subreddit. Furthermore, engaging in critical

discussion of another creator's content is fundamental First Amendment-protected activity. Through their Megathreads, Does intended to—and did—support such critical discussion. A finding of infringement here would drastically alter the content creation world, stifle free speech, and result in the senseless unmasking and harassment of individuals who only furthered discourse about a controversial public figure.

### 1.    TEI presents no evidence that Does knew of specific infringement.

TEI has not shown that Does knew of specific infringement, on Denims' stream or elsewhere.

Does moderated the H3Snark Subreddit, which arose from a public interest of critiquing H3. Does' actions must be examined in this larger context, where is it extraordinarily common for third parties, including H3Snark users and other content creators, to discuss or create works criticizing another's content, political stances, and public actions. (Doe Decl. [D.E. 8] ¶¶4, 7, 8, 14, 44, 66, 78-79, 83; DRD ¶¶10, 42.1, 43, 47.) Thus, when creators stated they intended to "react to" *Nuke*, Does's knowledge was that these reactions would be fair use, i.e., critique and commentary. (Doe Decl. ¶¶20, 34, 42, 108, 130, 254; DRD ¶¶17.5, 63.) Here, Does have demonstrated through competent evidence that they had no knowledge of specific infringement. TEI's conclusory allegations of the required knowledge of infringement are plainly insufficient. *See Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). As an initial matter, TEI's construction of the knowledge element is flawed and backwards. TEI has the burden to show Does' *knowledge* of infringement, not *lack of knowledge* of fair use. While direct copyright infringement is a strict liability claim, what separates contributory infringement from direct infringement is the knowledge requirement. TEI's attempts to impose strict liability, when that is not the law.

TEI did not allege actual knowledge in its Complaint. Realizing this deficiency, TEI now simply changes the verb tense and posture of its facts, and even the legal standard. Now, instead of arguing that Does "knew it was ***highly likely***" Denims' reaction "***would be***" an infringing "group viewing session" and not a fair use (Compl. ¶45), TEI argues that because Does knew that Denims was "currently" streaming, Does "knew that Denims was exploiting the Works," without a license, and without permission. (Opp. 19:24-21:1.) This argument involves a tremendous factual leap as knowledge that Denims was streaming is not knowledge of *infringement*.

TEI's purported "evidence" of knowledge of infringement is speculative and contradicted by Does' evidence, as summarized below:

**Complaint Exhibit G** [Motion Ex. 45]:

- TEI argues that Does' statement of not showing support for H3 meant that Does knew Denims' use was unauthorized. (Opp. 20:17-18.) Does have clarified—and the purpose of the entire Subreddit demonstrates—that H3Snark users disagreed with TEI. (Doe Decl. ¶¶7-8, 111, 169, 195, 211, 252, 267, 273; DRD ¶14.) That disagreement is the meaning of "without showing support for H3" (DRD ¶14), not the twisted meaning of stealing views that TEI ascribes to it.

- TEI argues that because Does linked to creators who "supported" H3Snark "by engaging directly" with Does, that meant Does knew these creators would stream the Works without seeking TEI's permission. (Opp. 20:18-19.) Here, this is not what the post states (it does not state that creators engaged with Does) and is untrue anyway; TEI puts words and meaning into Does' post to serve its own purpose. In actuality, references to creators supporting the Subreddit reflect three creators' direct engagement with the Subreddit <u>community</u> as users, or citation of r/h3snark in their own critiques, not any creator's direct support of <u>moderators</u>. (DRD ¶14.) This is in no way evidence that Does knew that creators would infringe.

- Further, this Megathread was posted roughly 20 hours before *Countdown* and 21 hours before the release of *Nuke*, i.e., before *anyone* reacted. But knowledge of *potential future* infringement is not adequate to show specific knowledge of actual infringement. *See Robinson v. Binello*, 771 F. Supp. 3d 1114, 1124 (N.D. Cal. 2025).

- TEI argues that this Megathread is "proof" that the H3Snark Mods knew that Denims' anticipated use of the Works was unauthorized. (Opp. 10:21-21:1.) TEI's evidence simply does not show that Does knew Denims' anticipated use would be infringing.

**Complaint Exhibit I** [D.E. 7 at. p. 132]: TEI argues that Does' failure to view Denims' stream demonstrates knowledge of infringement. (Opp. 1:20-23.) This argument is both unfounded and contrary to law. Denims' announcement of her *intent to react* did not indicate an intent to infringe. Moreover, *Nuke* had not even been released at the time this Megathread was posted. (Does Decl.

¶¶33-34, 38, 121; DRD ¶15.)

**Complaint Exhibit H** [D.E. 7 at p. 115]: This Megathread stated "Places to watch **reactions to** this video: [*Nuke*]," with a list of creators who had planned to react to *Nuke*. This Megathread did not include any reproduction or infringement of TEI's content. (DRD ¶16.) This Megathread also listed TEI's source of *Nuke* as the **first link**; the post prominently displayed the official *Nuke* thumbnail and metadata, which automatically linked to TEI's original YouTube upload. (DRD ¶17.1.) Reddit's preview clearly directed users first to TEI's *Nuke*. (DRD ¶¶17.2-17.9.) Indeed, upon *Nuke*'s release, the Subreddit featured TEI's video as its most visible post, and if a user clicked on that thumbnail image, they would immediately be brought to TEI's original video of *Nuke*—thereby *giving* TEI more views. (*Id.*) User comments to the Megathread further indicated to Does that Denims' use was fair—and that r/h3snark users engaged with Denims' transformative political commentary, overlapped with many users' own stances. (*See* DRD Ex. 78.)

TEI also argues that Does' linking to Denims' stream without determining whether she made a fair use, is the "epitome of willful blindness." (Opp. 21:16-20.) In doing so, TEI again assumes that Does *subjectively* believed infringement was likely occurring. However, Does have already demonstrated that they *did not know or believe* infringement was occurring, or *would occur*. (Does Decl. ¶¶34, 40, 42-43, 45, 120-123, 125, 200, 217, 292; DRD ¶¶9, 15, 17.10, 31.) TEI cannot twist the facts to make Does cognizant of future infringement which may or may not occur.

In short, TEI's entire basis of knowledge of infringement is self-serving speculation, and belied by Does' declarations. Further, TEI's attempt to impose a knowledge requirement that is *greater than a copyright attorney's*, *see* Opp. fn. 21, is illogical and unfounded.

On that point, TEI argues that it did not *give* Does notice that it believed Denims' stream was infringing because it didn't want to risk exposure for a DMCA misrepresentation. *See id.* But TEI didn't need to issue a DMCA takedown notice. It could have simply posted a comment on the Megathreads, or sent Does a Modmail, notifying Does of purported infringement. (Does Decl. ¶¶31, 41, 50, 64.) TEI didn't need its attorney to do this. (RBN Decl. ¶51.) TEI itself could have contacted Does, and since TEI operates its own subreddits, it knows how Modmail operates. (DRD ¶¶9, 31.) Further, TEI's own evidence shows it was *closely monitoring the Subreddit* at the times the

Megathreads were posted; witnessed the alleged infringement; and made a willing choice *not* to notify Does. (DRD ¶¶8, 31.) This does not show vigorous protection of copyright; it shows a trap.

TEI has not shown any requisite knowledge.

### 2.    TEI presents no evidence that Does induced Denims' alleged infringement.

Contributory liability stems from tort-law concepts of enterprise liability and imputed intent. *See Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1051 (N.D. Cal. 2023). In other words, there must be some coordinated effort and some reasonably credible ascribed aim of infringement. TEI offers no competent evidence that there was any connection between Does and Denims (or any other creators), or that there was an imputed intent to infringe. Rather, as Does show, the intent of the Megathreads was to facilitate discussion and critique of a highly public figure and *Nuke*. (Doe Decl. ¶¶4, 6, 9, 32-34, 38, 45, 122, 194; DRD ¶11.)

As with the knowledge requirement, TEI twists the words of the Megathreads[3] into speculated "active" steps of inducement, where there was none. This does not suffice. *See Awtry v. Glassdoor, Inc.*, 2016 WL 1275566, at *14 (N.D. Cal. Apr. 1, 2016); *see also Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) (plaintiff must show a "high degree of proof of the improper object"; this requirement is dispositive).

Does included links to content creators' homepages on posts on the Subreddit; Does did not conspire, collude, or otherwise collaborate with Denims or any creator about diverting views from or infringing on TEI material. (DRD ¶¶8, 14, 60.) Does did not advertise or solicit to Denims an infringing use or instruct Denims, or anyone else, how to engage in an infringing use. (DRD ¶¶2, 8, 14.) *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723 at 745-76; *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 915-16 (2005). Indeed, there was no clear and affirmative improper object of infringement, from Does to anyone, let alone a "high degree of proof of the improper object." *See Fung*, 710 F.3d at 1034-35. No message was communicated to Denims at all.  Indeed, Denims and the other creators operated completely independently. (DRD ¶14.) TEI's attempts to distort the intent of the Megathreads, in the face of Does' contradictory evidence, through convoluted

---

[3] TEI also claims Denims "admitted" Does were responsible for "signal boosting" her stream. (Opp. 22:9-10 and Compl. Ex. L.) An actual review of this exhibit shows this is not what happened, but further evidences TEI's habit of transforming the evidence to serve its own argument.

1    attributions, misses the mark.

2        In short, Does did not post the Megathreads with the object of promoting infringement

3    through any clear expression, despite TEI's attempts to frame it otherwise. *Perfect 10, Inc. v.*

4    *Giganews, Inc.*, 847 F.3d 657, 672 (9th Cir. 2017). Mere knowledge of infringing potential, or actual

5    infringing uses by others, is not enough here to subject Does to liability. *See Perfect 10, Inc. v. Visa*

6    *Int'l Serv. Ass'n*, 494 F.3d 788, 801 (9th Cir. 2007). And failure to take affirmative steps to prevent

7    infringement alone cannot trigger inducement liability. *VHT, Inc.*, 918 F.3d 723 at 746. Does had no

8    affirmative duty to reach out to Denims, a creator they did not control or even interact with, on a

9    platform (Twitch) Does didn't operate, to prevent Denims from infringing and to ensure she had

10   made a fair use.

11       TEI argues that Does induced Denims' infringement by sending viewers to her stream. (Opp.

12   22:6-10.) TEI cites no authority for the proposition that linking to content on the Internet, without

13   more, *induces the recipient* of those viewers, to infringe copyright. TEI's argument makes no sense:

14   the presence of viewers does not communicate a specific object to infringe, and Does had no

15   knowledge that Denims *would* infringe. TEI also argues that Does aimed to satisfy the Subreddit's

16   *users'* desire for unauthorized versions of the Works. (Opp. 22:11-21.) But TEI does not allege in

17   its Complaint that the Subreddit's users infringed, nor could it. *See Tarantino v. Gawker Media,*

18   *LLC*, 2014 WL 2434647, at **3-4 (C.D. Cal. Apr. 22, 2014). Thus, without a direct infringement

19   allegation against Subreddit users, any inducement claim fails. *See id.*

20       Similarly, although TEI sets forth no argument for a theory of material contribution, any such

21   argument would fail. Material contribution turns on whether the activity in question "substantially

22   assists" direct infringement. Does' publication of the Megathreads in no way "substantially assisted"

23   Denims' allegedly infringing activity, nor were Does' Megathreads an "essential step in the

24   infringement process." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943-44 (9th

25   Cir. 2011). Denims' conduct was without any assistance from Does. (DRD ¶¶10- 11, 14.)

26       Finally, TEI argues that prior history of providing allegedly infringing YewTube links "to

27   deprive TEI of advertising revenue" apparently shows Does' penchant for infringement. (Opp.

28   22:22-25.) TEI's argument is speculative, and lacks any temporal nexus to the Megathreads and

1    Denims' alleged infringement. Thus, it is irrelevant. TEI further ignores Does' evidence that they

2    stopped allowing alternate viewing sites months before the alleged infringement at issue here, and

3    encouraged their users to respect copyright and engage in fair use. (Doe Decl. ¶¶61, 117, 118, 214;

4    DRD ¶20.) TEI has not shown inducement.

5    **D.    Does made a fair use of TEI's Works.**

6         TEI's argument that Does did not make a fair use also fails. As to the first factor, Does used

7    the Megathreads for criticism and commentary fundamentally at odds with TEI's original purpose

8    of *Nuke*, making their use transformative. *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d at

9    884. Does' use was not for a commercial purpose; Does never financially benefitted or received any

10   compensation for moderating H3Snark, or for linking to content. *See id*. (Doe Decl. ¶¶4, 195, 292;

11   DRD ¶¶6, 39.) The nature of *Nuke* was highly factual, weighing in Does' favor; and, Does did not

12   use *any* portion of the works in the Megathreads. (Mot. Ex. 1, Compl. Exs. G-I.) Finally, no one

13   would have viewed the Megathreads and conversation thereon as a substitute for watching *Nuke* that

14   would have created an effect on the potential market for it.

15        TEI's authority (Opp. 10:2-15) is distinguishable, where Does did not reproduce TEI's works

16   at all, and Does did not "implicitly invite" criticism; instead, the *entire purpose* of the Megathreads

17   was a forum for criticism and discussion of *Nuke*, and through and on the Subreddit, Does and

18   r/h3snark users engaged in legitimate discussion of transformative reactions to *Nuke*; the

19   Megathreads were not just an implicit invitation. Thus, Does' use was fair.

20   **E.    Denims[4] made a fair use of TEI's Works.**

21        Denims' use was transformative, and in no way superseded or supplanted the use of the

22   original, weighing in favor of fair use. A scathing criticism of a work is the quintessential example

23   of fair use. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 592 (1994); *In re DMCA Subpoena*

24   *to Reddit, Inc.*, 441 F. Supp. 3d at 885. Denims' reaction stream was exactly that: she frequently

25   pauses *Nuke* to criticize and mock (both content and quality), explain, provide context, challenge,

26   and argue, all the while interacting with her live audience. DRD ¶13, fn. 4 & Ex. 76. She also rewinds

27
28   [4] TEI argues, in its declaration, that it chose to sue Denims because of the timing of her reaction
     stream. (RBN Decl. ¶56.) But the truth is Ethan Klein harbors a deep-seated animosity towards
     Denims. (DRD ¶13.2 & fns. 5, 6.)

and rewatches to provide a more informed reaction. *See id.* A review of Denims' stream makes it clear that viewers who wanted to view the *Nuke* in its entirety, without Denims' criticism and commentary, would not be able to do so by watching her stream. (Mot. Ex. 1, Compl. Ex. K.) There is no option to pause, fast-forward, move to the next segment—because her stream was *live*. In short, Denims' reaction stream did not supplant the use of the original; it served an entirely different purpose.[5]

TEI also has not shown that Denims' stream acted as a market replacement, instead of a market complement that didn't impair demand on the original. *See Nat'l Fire Prot. Ass'n, Inc. v. UpCodes, Inc.*, 753 F. Supp. 3d 933, 965 (C.D. Cal. 2024). TEI conclusorily states that Denims' reaction stream served as a market replacement for its works, assuming that Denims' audience watched her instead of TEI's content because of timing. (Opp. 18:27-19:3.) TEI also argues that Denims advertised herself as a market substitute.[6] (Opp. 18:17-26.) TEI has presented no admissible evidence, though, that anyone watched Denims' stream instead of its works. It is clear from Denims' stream that anyone who wanted to watch *Nuke* in its entirety without interruption or Denims' criticism and commentary, would not have viewed Denims' stream instead. Finally, TEI provides no evidence of market substitution. TEI's generalization of how YouTube videos are monetized, in a party declaration, without actually attributing lost views to Denims' stream (JKD ¶32), is not admissible nor competent evidence, nor does it demonstrate actual loss. Importantly, before there can be a market substitute, there has to be a *market*; TEI ignores the fact that many, if not most, of the people who watched Denims' stream, would not have watched its content *at all*.[7] The fourth factor weighs in favor of fair use.

**F.    The balancing of factors weighs in favor of Does.**

To unmask Does, this Court must find: 1) that disclosure of Does' identities is necessary, for

---

[5] Here, Denims' commercial use of the works, if any, was incidental, and thus does not inhibit her stream's transformative character. *See Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013).

[6] TEI also submits a debate from three years ago as evidence that Denims "knew" her stream "took views away from the original," in this specific instance, now. Denims' comment then is irrelevant.

[7] TEI also ignores the fact that it, itself, "reacted" to Denims' reaction video, both in a full-length episode (with 845,000 views currently) and later in a segment it clipped and broadcasts separately (with 26,000 views). (DRD ¶13.2.) So, far from losing revenue, it's making even more.

KRONENBERGER ROSENFELD

1    TEI to protect against or remedy *serious wrongs*, while 2) such disclosure causes relatively little

2    harm to Does' First Amendment and privacy rights. *See Music Grp. Macao Com. Offshore Ltd.*, 82

3    F. Supp. 3d at 983 (applying *Highfields*). TEI cannot meet this standard. The balance of harms

4    overwhelmingly favors Does, and First Amendment-protected, critical speech at large.

5        TEI doesn't even attempt to "balance" competing harms. It relies solely on *Cognosphere Pte.*

6    *Ltd. v. X Corp.*, 2024 WL 4227594 (N.D. Cal. Sept. 18, 2024) for a four-part test which does not

7    balance anything. TEI fails to address any other authority which does weigh competing harms. Under

8    *Highfields* and its progeny demonstrate, the balance weighs in favor of Does.

9        The alleged wrong here is creating pinned discussion threads which formerly linked to

10   reaction videos of TEI's content. The alleged harm is, at max, 45,000 views of Denims' stream by

11   people who probably wouldn't have watched *Nuke* in its original form anyway, over a period of, at

12   max, 4 hours. (DRD Ex. 77.) These are not serious wrongs compared to the immense harm Does

13   will suffer to their First Amendment and privacy rights if the Subpoenas are not quashed, and that

14   the public will suffer through the stifling of free speech.

15       Does voluntarily made the Subreddit inactive after TEI's threats to target its users and

16   moderators, and Does ceased all public comment and criticism of TEI, stifling their free speech.

17   (DRD ¶¶36-37, 40.) Despite this, TEI continues to publicly discuss Does and promote harassment

18   through affiliated creators and fan communities. (DRD ¶¶22.3, 23, 23.1-4, 24, 24.1, 26.1.) These

19   coordinated campaigns have extended beyond the Subreddit, silencing or threatening to silence

20   communities across Reddit. (DRD ¶¶31-31.1.) The chilling effect is immediate and measurable:

21   users have deleted accounts, wiped posts, and refrained from participating in legitimate criticism of

22   public figures online. (DRD ¶¶33, 37.) Further, a finding that rightsholders can unmask anonymous

23   speakers who had the sole intent of furthering First Amendment-protected speech, based on a

24   fundamentally flawed, pretextual, and retaliatory contributory infringement claim, will silence

25   countless others.

26       TEI's claims that it "promises" not to use Does' identifying information are disingenuous.

27   (JKD ¶5; DRD ¶¶48, 50, 51, 51.1, 57.1.) TEI's own disclosures, such as threatening to expose Does

28   to their employers and educational institutions, doxing third parties, inciting its fans and others to

KRONENBERGER ROSENFELD

harass Does, and encouraging speculation about and investigation into anonymous users' identities, show otherwise. TEI's actions have placed Does in genuine danger of being doxed or harassed. (Doe Decl. *passim.*; DRD *passim.*) TEI's own admission that it does not intend to pursue any other litigation "at this time," overtly alluding to some future use of Does' identities, is disturbing at best. (JKD ¶5.a.) Even in its own Opposition, TEI cannot help itself from revealing private identifying information of *three* of its critics. (DRD ¶51; RBN Decl. Exs. 60, 68; JKD ¶49.) TEI's established pattern of disclosure demonstrates that any protective order would be woefully unreliable.

It is not just TEI that Does have to worry about. H3 fans have a proven track record of harassing and even doxing people who are critical of H3 and Ethan. (Doe Decl. ¶¶87-89, 174, 182, 190, 257, 260-261, 284, 297; DRD ¶¶28, 46.1; DRD Ex. 86 & 87.) There is also great risk to Does from the myriad of content creators covering these lawsuits and this Motion. (Doe Decl. ¶¶91-95; DRD Ex. 89.)

Further, this Court should consider TEI's motives in filing these lawsuits. As copious evidence shows, TEI initiated this lawsuit to impose undue financial burdens on Does; ruin them in three different lawsuits; follow through on his previous threats to target Does and their families, friends, workplaces, and educational institutes; and shut down the Subreddit. (Doe Decl. ¶¶66, 71-71.1, 73-73.1, 74.1, 197.5, 224, 261; DRD ¶¶22, 30, 21.2, 21.2.1, 21.3.1, 23.5.1, 60.) This is all based on conduct *not* related to copyrights, but for alleged defamation, business interference, harassment, and criminal conduct—none of which Does committed. (Compl. ¶35.d; Doe Decl. ¶¶72.1, 72.2; Mot. Ex. 25; DRD ¶¶22, 22.1, 22.2, 23.2, 59; JKD ¶93.) Even after Does shut the Subreddit down, TEI continues to attribute content critical of it to Does. (Doe Decl. ¶¶149, 172, 232; DRD ¶¶3, 24, 24.1, 24.1.1, 25, 43, 44.) TEI even goes so far as to say that Does could now "walk away!" from these lawsuits by "turn[ing] off the monitor." (DRD ¶¶24, 24.1; Ex. 84.) That statement, despite the fact that Does have stopped publicly discussing H3, proving that TEI's silencing tactics already worked, shows TEI does not and will never believe them. TEI's self-admitted foe is a psychologically un-recognized "snark-brained" theory of thought (JKD ¶57), which TEI *cannot defeat by unmasking Does in these lawsuits*. TEI wants to punish Does for perceived wrongs of masses, which Does had nothing to do with.

In sum, the relative harm to TEI's copyright interests, compared to the grave harm Does and the public have suffered and *will suffer*, immensely weighs in favor of quashing the Subpoenas.

**G.     TEI has not established that its Subpoenas seek relevant information.**

TEI appears to claim that the information sought by its Subpoenas is directly relevant to pursue its claim of contributory infringement. (Opp. 24:16-22; RBN Decl. ¶¶75-78.) Not so. TEI's Subpoenas seek identifying information for accounts which had no involvement with the alleged infringement, or r/h3snark moderation at all. (Doe Decl. ¶102.) Notably, u/RomanPeee was never an h3snark mod. (DRD ¶3.) Other accounts are not moderator accounts, were never active on r/h3snark, never even existed as accounts, or have no connection to the Megathreads. (DRD ¶¶3, 55, 55.1, DRD Ex 92.) TEI has submitted *no* evidence of the relevance of the Discord accounts it seeks. The Subpoenas are also temporally overbroad and unrelated to the alleged activity. This indiscriminate targeting highlights that the Subpoenas are intended to intimidate and suppress lawful criticism rather than address copyright concerns.

TEI could have easily sought relevant information in its Subpoenas. The usernames of moderators of subreddits are ascertainable from the Subreddit itself. (DRD ¶3.) On the dates the Megathreads were posted, TEI could—and should—have examined the h3snark Subreddit page to view who the mods were on that date. That information was readily available, and TEI moderates its own subreddit, so it knows this information is available. (Doe Decl. ¶8; DRD ¶3.) Indeed, TEI's counsel was already capturing screenshots of the Megathreads as evidence for the Action. (Mot. Ex. 1, Compl. Exs. G-I; RBN Decl. ¶¶35, 38-19.) Instead, TEI issued vastly overbroad Subpoenas seeking: 1) information prohibited from disclosure by federal law, and 2) the identities of users who were never moderators of the Subreddit, like RomanPeee, and Discord users for whom TEI has shown *no* connection to the allegedly infringing Megathreads, or the h3snark Subreddit at all. TEI doesn't even attempt to explain the relevancy of these requests. Further, as discussed below, Section I, Does' identities are not crucial to TEI pursuing its claim, if it has one. This demonstrates an additional reason to quash the Subpoenas.

**H.     TEI did not significantly narrow the scope of the Subpoenas.**

TEI claims it attempted to offer "concessions" to Does by narrowing the Subpoena. (Opp.

7:9-15; RBN Decl. ¶¶69, 73-74.) But TEI's first concession—to eliminate its requests for stored communications content, which clearly violate the federal Stored Communications Act, 18 U.S.C. §2701, *et seq.*—is not a concession at all, but merely a belated attempt to rein in heinously overbroad and illegal requests. TEI's "willingness" to limit the Subpoenas to only encompass identifying information is another non-concession: it is no more than a court would award. And another of TEI's "concessions," that Reddit and Discord only provide PII of individuals authorized by the Court, required Does to file the instant Motion anyway. TEI cannot expect Does—or the Court—to take these "concessions" seriously as indicia of good faith.

**I.      In the alternative, a protective order is warranted.**

If this Court does not quash TEI's Subpoenas entirely, a protective order is absolutely warranted. The Ninth Circuit has permitted litigants to use pseudonyms in cases when identification creates a risk of retaliatory physical or mental harm. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) ("*Advanced Textile*"). Importantly, here where Does' anonymity facilitates free speech, the disclosure of their identities is itself an irreparable harm. *See Art of Living Found. v. Does 1-10*, 2011 WL 5444622, at *9 (N.D. Cal. Nov. 9, 2011). Further, records that might be used to **gratify private spite** or promote public scandal demonstrate compelling reasons to keep certain judicial records secret. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016).

Where a party seeks to proceed pseudonymously on the basis of retaliatory harm, courts balance five factors: 1) the severity of the threatened harm, 2) the reasonableness of the anonymous party's fears, 3) the anonymous party's vulnerability to such retaliation, 4) the prejudice to the opposing party, and 5) the public interest. *See Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 852 (N.D. Cal. 2023) ("*GitHub*"). These factors overwhelmingly favor Does.

First, the severity of the threatened harm is immense. Ethan Klein has professed his intent to ruin Does, financially, personally, and professionally. (Doe Decl. ¶¶66, 71-71.1, 73-73.1, 74.1, 197.5, 224, 261; DRD ¶¶22, 30, 21.2, 21.2.1, 21.3.1, 23.5.1, 60.) In *GitHub*, the Court found a protective order appropriate where the parties received legitimate and credible threats of violence. *Id.* at 852. Does, too, have received such veiled death threats, including to the h3snark Modmail.

1 (Doe Decl. ¶¶257, 272) Second, the reasonableness of Does' fears is justified; Ethan has personally

2 threatened harm to Does, and his prior actions of doxing, harassing, and inciting his fanbase to do

3 the same, reasonably lead Does to fear retaliation. (Doe Decl. *passim.*; DRD *passim.*) The fact that

4 some of these threats may come from "internet 'trolls'" and not TEI directly, does not render Does'

5 fears of harm unreasonable. *GitHub* at 853. Third, Does are especially vulnerable to retaliation; they

6 face loss of their jobs and even their careers; likelihood of retaliation, doxing, and swatting; and

7 adverse mental health consequences. (Doe Decl. ¶¶65, 73-73.1, 165, 297-297.1, 197.5; DRD ¶¶21,

8 21.2, 22, 22.1, 22.2, 23.5.1, 46, 46.1, 47, 48.) *See Advanced Textile* at 1072.

9     Conversely, TEI has not established any prejudice, merely stating a vague but undeveloped

10 concern of hampering discovery and "proceed[ing]" with the case. (Opp. at 25:17-18.) These

11 assertions, unsubstantiated by any facts, are not sufficient. Indeed, courts have allowed defendants

12 to proceed pseudonymously well into later stages of a case. *See Art of Living Found. v. Does 1-10*,

13 2011 WL 5444622, at *10.

14     Finally, the public interest does not weigh against permitting Does to proceed

15 pseudonymously where Does' identities themselves are not central to the issues raised by the case,

16 which purportedly is copyright infringement. *See Ctr. for Auto Safety*, 809 F.3d at 1097; *In re*

17 *McClatchy Newspapers, Inc.*, 288 F.3d 369, 374 (9th Cir. 2002).

18 **J.    Does' attorney's fees are warranted.**

19     Does reiterate their request for attorney's fees, to be outlined in a separate motion. TEI's

20 Action, three lawsuits, and its Subpoenas at issue here, were pretextual, unwarranted, and lacking

21 any factual or legal basis under Fed. R. Civ. P. 11. *See Highfields Cap. Mgmt., L.P. v. Doe*, 2005

22 WL 8188026, at **6-7 (N.D. Cal. May 31, 2005).

23                   **CONCLUSION**

24     TEI's Opposition is unconvincing; instead, it shows that Does are correct. The Opposition

25 makes crystal clear that TEI's three lawsuits are not about copyright infringement: the goal is to

26 silence critical speech and avenge perceived wrongs. There is an opportunity here for this Court to

27 issue a precedent—that vengeful plaintiffs cannot bully critical speakers into submission and silence

28 through unmasking subpoenas. Does respectfully ask the Court to set the right precedent.

KRONENBERGER ROSENFELD

Respectfully Submitted,

DATED: November 3, 2025                    **KRONENBERGER ROSENFELD, LLP**


By: ___s/ Leah Rosa Vulić_____
                                    Leah Rosa Vulić

Attorneys for Movants/Defendants Does