UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Sallie Kim, Magistrate Judge

In re: ) No. 3:25-mc-80295-SK
)
SUBPOENAS TO REDDIT, INC., )
AND DISCORD, INC. )
______________________________)

San Francisco, California
Monday, April 20, 2026

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND RECORDING 9:40 - 10:07 = 30 MINUTES

APPEARANCES:

For Plaintiff/Respondent:
Heah Bar-Nissim LLP
1801 Century Park East
Suite 2400
Los Angeles, California 90067
BY: ROM A. BAR-NISSIM, ESQ.

For Movant:
Kronenberger Rosenfeld, LLP
548 Market Street
Suite 85399
San Francisco, California 94104
BY: LEAH R. VULIC, ESQ.

Transcribed by:
Echo Reporting, Inc.
Contracted Court Reporter/Transcriber
echoreporting@yahoo.com

Monday, April 20, 2026 9:40 a.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

(Call to order of the Court.)

THE CLERK: Calling Case Number 25-80296, In Re: Subpoenas to Reddit, Inc., and Discord, Inc.

Please state your appearances for the record, starting with the Plaintiff.

MR. BAR-NISSIM: Good morning, your Honor. Rom Bar-Nissim of Heah Bar-Nissim on behalf of Plaintiff and respondent Ted Entertainment, Inc.

THE COURT: Good morning.

MS. VULIC: Good morning, your Honor. Leah Vulic of Kronenberger Rosenfeld on behalf of Defendants Does.

THE COURT: Good morning.

Okay. I hope people got a copy of my questions. Let me just start with the very first one. This is directed towards Ted Entertainment, Inc. The DMCA provides a procedure. Did TEI issue the subpoenas pursuant to the procedure under the DMCA for issuing subpoenas?

MR. BAR-NISSIM: No.

THE COURT: Okay.

MR. BAR-NISSIM: The reason --

THE COURT: Why not?

MR. BAR-NISSIM: I'm sorry.

THE COURT: And why not?

MR. BAR-NISSIM: In order to issue a subpoena under 512(h), there has to be the issuance of a takedown notice. This is pursuant to Section 512(h)(2)(A). No DMCA takedown is at issue in this particular case. Therefore, this is not a 512(h) proceeding.

THE COURT: Understood. Okay. Great.

The next question is directed to both sides. If the subpoena was not issued pursuant to the DMCA, which is the case here, which I thought it was, did the parties -- why did the parties discuss law applying the DMCA legal standard instead of the Federal Rule of Civil Procedure 45? This is a straight Rule 45 motion.

Let me hear first from the Plaintiff, and then I'll hear from Ms. Vulic.

MR. BAR-NISSIM: Certainly. Your Honor, I apologize for saying this. I think there might be an incorrect characterization of the standard, whether 512(h) or Rule 45. Section 512(h) actually imports Rule 45 into the analysis.

This is specifically to be found in Section 512(h)(6), which states that the FRCP shall apply to the, quote, "greatest extent possible," end quote, regarding, quote, "the issuance, service, and enforcement," end quote, of the subpoena.

There are cases that actually discuss this importation analysis greatly in depth. I would specifically direct the Court towards Signature Team Management LLC v. Automattic, 941 F.Supp.2d 1145, at 1152 through 1153.

THE COURT: Okay. All right.

Ms. Vulic, your response?

MS. VULIC: We agree. The case law applies equally to DMCA subpoenas and Rule 45 subpoenas, for the reasons that Mr. Bar-Nissim stated. Both are -- the District Courts have applied the same First Amendment framework when a party seeks to unmask an anonymous speaker in these cases.

We would note that the principal difference between a Rule 45 subpoena and a DMCA subpoena generally is that, with a DMCA subpoena, they're issued as an administerial event by the Clerk of the Court upon satisfaction of the requirements of Section 512, whereas, with Rule 45, typically a party is going to the Court and seeking authorization from the Court, typically before a Rule 26(f) conference, because otherwise they're not allowed to conduct discovery.

So, in a typical situation, a Plaintiff would go the Court and ask for permission, and show why it has a basis for obtaining an unmasking subpoena. That did not happen in this case because, in the Central District case, the Plaintiff and Denims simply stipulated to issuance of the

subpoenas. There was no motion for early discovery. There was no scrutiny by the Court at the first instance. So, if the Court believes there is a separate DMCA legal standard, we suggest that that would apply here, because there was no original scrutiny by the underlying court.

THE COURT: In other words, both sides agree that the DMCA standard applies here, even though it's a Rule 45 subpoena, not under the DMCA? Is that what you're saying, Ms. Vulic?

MS. VULIC: Essentially they're the same standard.

THE COURT: So, when I looked at the case law, it appears that there are not the same standard, that some cases are analyzed within the DMCA. They don't explicitly say they're different standards, but, when cases are analyzed under the DMCA, they use a very specific framework that is slightly different from the Rule 45 framework. So that's what I was concerned about in this situation.

In other words, under the Rule -- under the DMCA analysis, if I go down that path and I use that analysis, I wouldn't use the Highfields test, but I would follow the standard that is under several cases that have been adjudicated in this district in which they talk about finding a prima facie case of copyright infringement under the DMCA standard, and that's why I'm concerned about the difference between Rule 45 and the DMCA.

Does that make sense?

MS. VULIC: It does, but there are DMCA cases that do user the Highfields standard, and I think most courts engage in the same framework regardless of whether they call it the Highfields standard. In other words, they first look to see whether the Plaintiff has made a showing of its claim. Under Highfields and other authority, that requires an evidentiary standard, rather than just a pleading standard.

But then we move to the second part of the test, which is the balancing test, looking at "Does the Plaintiff's case and effort to unmask the speakers weight against the Does' rights to" --

THE COURT: Understood.

MS. VULIC: -- "First Amendment speech?"

THE COURT: Okay. I think question three has been obviated by the earlier responses, so the next question, number four.

So the parties appear to be arguing the merits of Denims' alleged copyright infringement and the Doe Defendants' alleged contributory copyright infringement. Why does the Court not only have to find TEI made a prima facie case for copyright infringement and contributory copyright infringement to decide the Does Defendants' motion to quash?

Let me hear first from Mr. Bar-Nissim, and then I'll hear from Ms. Vulic.

MR. BAR-NISSIM: Thank you, your Honor. I want to be sure first that I understand the question clearly. I apologize for myself. I was slightly confused.

THE COURT: Okay.

MR. BAR-NISSIM: Are you saying that there's a concern other than the initial showing of infringement by Denims, and not incorporating a fair use analysis, and also showing contributory infringement, or -- in other words, is the issue here the issue of whether Denims made a fair use or not?

THE COURT: I think the issue here is that why do I -- do I have to find only that TEI made a prima facie case for infringement and contributory infringement in order to decide it, or do I have to go further than that? In other words, what is the standard that I have to use for this? Do I have to say it's just prima facie, or do I look at evidence, as Ms. Vulic has said? And it would be a prima facie case of infringement against Denims, plus contributory infringement against the Does Defendants.

MR. BAR-NISSIM: I think I understand.

THE COURT: Okay.

MR. BAR-NISSIM: So, in terms of, you know, the pleadings versus evidentiary, it seems something that is

also very unique to this district, as opposed to other districts. The Northern District appears, whenever there is an assertion of some First Amendment privilege, whether it be anonymity or it might be -- the fair use issue seems to be a bit in flux, as I'm sure you're well aware, but I think that has been imported into the first-prong analysis, which is different than the Central District, which is different than other areas.

This is -- in the Northern District, it seems to be the distinction between what's called the Highfields test and the Sony test. I would say the major distinction between the two is that the Sony test is a prima facie allegations of infringement, which the Highfields looks at things more from an evidentiary standard.

I will be honest. I looked very far and wide to kind of see if there was a better articulation of the prima facie standard in the Northern District, and I would say this. It seems that the courts employ a different level of scrutiny given the speech that is at issue, and so, for example, in your citation to Barnes v. YouTube, while there was a casual passing assertion of fair use, it was more an issue of whether disclosure would implicate First Amendment rights, and given the prima facie showing in balance to the balance of the equities, the motion to quash was denied, and, generally speaking, I would say if -- only where there is a

showing of fair use, the first standard does -- you know, does a motion to quash end up really getting granted.

There is a line, I found, that I think really helps explain the standard really well, albeit from the Second Circuit, in applying the lower Sony standard, but it used language that I think really applies to the prima facie evidentiary standard, which is in Arista Records v. Doe Three, 604 F.3d.110, at 123 through 124, Second Circuit, 2010.

This has to do with an ordinary torrent infringement case, which is where the Sony standard generally applies to, and in it they said factor two through four clearly, as a matter of law, weighed against fair use, but factor one, there was a factual dispute about -- or even an allegation dispute -- about whether there was use of private copies and space-shifting was fair use, and the Second Circuit said, with factor one, it, quote:

> "Raises questions of credibility and plausibility that cannot be resolved while Doe Three avoids suit by hiding behind a shield of anonymity."

In other words, the prima facie showing is basically "Do I have evidence presenting each element of the case?" If there is a factual dispute, then the motion must be denied, because at least that prima facie showing of

infringement is been (sic) made, and if there is questions about fair use that result in a credibility or factual dispute, then that is still insufficient to defeat the prima facie showing.

THE COURT: Understood. Okay. Thank you. Thank you.

Ms. Vulic, I'll hear from you on this.

MS. VULIC: Yes. Thank you.

So, Does believe the Court must find that the Plaintiff made a prima facie evidentiary case for copyright infringement and contributory infringement for the following reasons. So we believe that the Plaintiff must adduce the competent evidence as to every essential element of its claim. Clearly, direct infringement is an element of contributory infringement, so the Plaintiff must establish this.

Further, in the Ninth Circuit, the Court in In Re: DMCA 512(h) Subpoena to Twitter, Inc., 608 F.Supp.3d 868, at 879 -- that's the "Money Bags" case that your Honor referred to in a later question here -- Judge Chhabria held that:

"For the purposes of obtaining a subpoena, the Plaintiff is the one who must come forward with a prima facie showing that the use was not a fair use."

So here the Plaintiff bears the burden of showing that Denims infringed, that it was not a fair use, that Does infringed, that it was not a fair use, and the Plaintiff must show the requisite knowledge and inducement, which is the basis for their claim. I think Arista Recordings is distinguishable from the instant case because there it was obviously a direct infringement case.

Here this is a contributory infringement case, and, unlike direct infringement, which is strict liability offense, the Plaintiff has to show these additional knowledge and intent elements, and we believe that they have to show them on a real evidentiary basis, and this is a --

THE COURT: How can they do that if they don't even know who the person is? I mean, this seems to be the challenge that -- the bind in this kind of situation is that the Plaintiff doesn't even know who the person is. How can they even make -- how can they make a prima facie case like that with the bare information that they have? That's my concern here.

MS. VULIC: They can make it -- well, they can't make it, in my opinion, but they would do it by --

THE COURT: How could they look to make it if they can't find out who the people are?

MS. VULIC: That's -- I don't think that's true, because they can look at the basis of the allegations of

what they're claiming as infringement. So here it's not disputed what the megathreads said, where they were posted, and when they were posted, and to show -- first of all, they haven't shown that Does knew that Denims' stream was infringing, and, second, they haven't shown active steps of inducement.

THE COURT: I thought the active steps of inducement were encouraging people to watch the allegedly infringing stream, correct?

MS. VULIC: That's not the allegation that the Plaintiff makes. The Plaintiff makes the allegation that the Does induced Denims to infringe --

THE COURT: I see.

MS. VULIC: -- and there's simply no evidence of that.

THE COURT: Okay. Let me hear from Mr. Bar-Nissim on this one, on knowledge and intent with regard to the Doe Defendants' contributory infringement.

MR. BAR-NISSIM: First off, there were a number of things that were incorrect. To directly answer your question, the knowledge is they knew that the works were being shown without authorization.

THE COURT: How did they know that? How do you show that they knew that?

MR. BAR-NISSIM: Because they were -- they

explicitly stated in their posts that -- in the first post from January 31st, 2025, that Denims was streaming the podcast episode, and would be streaming the nuke. Then, later on, the second post megathread that they made, they said that -- they showed the status of all the people that were, quote/unquote, "reacting," and with -- Denims was at the top of the list, live, stating, "Now reacting." So they knew that she was streaming the works at that time.

I don't know how you can possibly make a subjective, let alone objective, analysis of fair use without even -- without claiming to have even seen the works in the first place. I think, to make that determination, you need to be able to view the works. At that stage, all you know is something is being shown without authorization.

I would also like to address a statement that was made regarding the standard of whether it's our burden or the -- you know, the Maz (phonetic) burden, the Does' burden to show fair use. This is an issue that was addressed in very first meet-and-confer. I wanted to try to resolve as many issues in dispute as possible, and one of them was, who has the burden of proving fair use? And under that, under Lenz v. Universal in the Ninth Circuit, it is unequivocally clear that it is always on the Defendant or the party that's trying to assert fair use for their burden. The statement that was in the Twitter case is an anomaly that has not been

followed in any other context, and that makes --

THE COURT: That's Judge Chhabria's decision. Is that correct?

MR. BAR-NISSIM: Yes, correct.

THE COURT: Okay.

THE COURT: Also, Mr. Bar-Nissim, did I misunderstand your argument about the Doe Defendants? I thought it was that the Doe Defendants encouraged other people to watch the --

MR. BAR-NISSIM: That is exactly right, and that is the very --

THE COURT: I was right about that, right? Okay.

MR. BAR-NISSIM: -- definition of contributory infringement, when you're advertising or promoting somebody else's infringement. I do not know where it came up with that we're claiming that we induced Denims to infringe. That is incorrect. What we are saying is they contributed to it by advertising it.

THE COURT: Okay. Understood. Thank you.

Okay. So, given --

MS. VULIC: Your Honor --

THE COURT: In light of that, I'm going to skip over question five, but let me go to question number six, and then, Ms. Vulic, I'll give you another chance to respond.

If the alleged infringer here, the Doe Defendants, allegedly infringed copyrights, but also commented with that copyright infringement, should I apply the Highfields test, as Judge Chhabria did in DMCA?

Let me hear first from Ms. Vulic on this, and then you can speak some more.

MS. VULIC: Yes. So, in the "Money Bags" case, Judge Chhabria correctly determined:

> "When adjudicating discovery requests that would unmask an anonymous speaker, then courts must first consider the First Amendment implications of disclosure, just as they would when adjudicating any other discovery request that risks infringing First Amendment rights."

Here the "H3 Snark" subreddit was a dedicated community for critical commentary on Ethan Klein and his podcast. He is a widely known public figure. H3 is his public-facing media enterprise.

It was not a harassment forum. It was a discussion space, in the long tradition of fan criticism communities, in which people who had followed Mr. Klein's career and content debated, criticized, and organized their views about him. The subreddit specifically attracted members who

disagreed with Mr. Klein's positions on matters of public concern, including his stated views on the Israel-Palestinian conflict, his management of his platform, and his treatment of other public figures with whom he had public disputes.

THE COURT: And, Ms. Vulic, this would be fine if they were just commenting on what Mr. Klein had said, but I think what makes this more of an issue in terms of copyright infringement or contributory infringement is that the livestream was livestreaming the whole show from start to finish, and then the Doe Defendants were allegedly, it looks like from the documents I've seen, urging other people to watch it.

And so that's what makes it different from just having commentary about a public figure, which is anonymous, and that falls into a totally different category, I've ruled on that in other cases, but, in this particular case, the interplay between copyright infringement or alleged copyright infringement, alleged contributory copyright infringement, and the First Amendment is what I'm concerned about.

I understand that they were commenting on a public figure, but the way they did it, you can separate out their comments of the public figure in the subreddit, and say that that's completely First Amendment issues, but what -- the

way they did it was to encourage other people to watch a full-length livestream, full-length livestream, of the other -- or the copyright owner's material. That's my concern. How do you get around that concern?

MS. VULIC: Sure. Let me explain something about Reddit. So Reddit users can post -- they can post threads, which are organized around a specific topic, and then other people can comment on them.

Megathreads are a specific tool that moderators use, and it's very, very common to do this. There are probably megathreads going on about this broadcast right now, and what they do is, the moderators say, "There is this topic that's coming up. Everybody is going to be discussing it. We don't want 10 different threads operating that we have to then moderate." So, in order to centralize the discussion and encourage the debate about it, they created these megathreads.

They did not encourage people to watch the entire livestream live on Denims' stream, and if you watch Denims' stream, it's really impossible to get the original content from that. She often pauses. She commentates over it. She flips to other things. She interacts with her audience. If you wanted to watch content nuke on its own, you would not be able to watch it on Denims' stream. It would be -- it would just not be the same experience.

The Does understand this, because reaction commentary is very, very popular in the content creation space. It is very common, and Mr. Klein does this himself. All of the content creators do this, where they interact with other people's content. They comment on it. You'll see it one of our exhibits it's -- there's often reactions on top of reactions on top of reactions.

Now, my clients know this, and they understand that when a content creator is reacting to anything, a film, a broadcast, something else, that is what they are doing. They are not just showing it was just a live, straight-through stream of the original content, and that's also why, in the third megathread that they posted, they included the original nuke, the link to the YouTube video itself. It was at the top of the post. It was as a hyperlink, so that the thumbnail -- if anyone went to that megathread and they clicked on that thumbnail, they would go directly to H3's broadcast of the nuke.

So, in this context, understanding that, it was not just a post that said, "Hey. Watch this video while Denims watches it." It says, "Here is where -- here are the people you can view to react to and comment on the original work, and we're creating this thread to streamline the discussion so that everybody can be here, everybody can have a conversation about it. That was the sole purpose of the

megathreads.

THE COURT: Okay. Understood.

Okay. Last question. Are there facts that are undisputed that I can make a determination of fair use? Let me hear from Ms. Vulic, and then I'll hear from Mr. Bar-Nissim on this.

MS. VULIC: Yes. We think that the Court can make a determination on fair use. There are two different fair use determinations to make, Denims' fair use and the Does' fair use. The facts that are undisputed are the content and timing of the Does' megathreads. So the Court can look to the complaint Exhibits G, H, and I, see when they were posted and what they stated.

The structure of the film itself, the nuke, the Court can get from the complaint and its subsections, and the film itself. Denims' stream, there are many undisputed facts, such as, you know, how long she watched it, the amount and length of her commentary, and the Court can also just view her stream to see what she did to make a determination of fair use. So we do think that there are undisputed factual issues. The things that are in dispute here are legal characterizations of those facts.

THE COURT: Okay. Mr. Bar-Nissim.

MR. BAR-NISSIM: Your Honor, I owe you a sincere apology. What I'm about to say is very embarrassing. One

of the things -- we realized recently that Exhibit K to the complaint was actually -- I mislabeled it, and submitted the wrong video file. Recently -- and this is some information you should know about the underlying case.

The underlying case has been stayed pending your determination regarding the subpoena. We have carved out of that stay a motion for judgment -- for partial judgment on the pleadings as to fair use on the nuke only, not the countdown episode, which, we must bear in mind, is still at play.

As part of the stipulations, the parties, both Denims and Ted Entertainment, Inc., stipulated to a corrected version of Exhibit K. The time stamps that we reference in th emotion are a reference to that corrected exhibit. I'm more than happy to submit that corrected exhibit version. This was addressed only recently.

THE COURT: Okay. Why don't you submit the corrected Exhibit K to me. I'd appreciate that.

MR. BAR-NISSIM: Okay. Thank you very much. But I would say, with that in mind, you have the two works, you know, the timing of all the works and the posts at issue. I think you will be able to make a fair use determination based on the evidence that you have before you.

THE COURT: Okay. All right. I'm going to take this under submission. Thank you for being prepared to

answer the questions, and I'll issue a written order.

MS. VULIC: Thank you, your Honor.

MR. BAR-NISSIM: Thank you very much, your Honor.

(Proceedings adjourned at 10:07 a.m.)

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.



Echo Reporting, Inc., Transcriber

Wednesday, April 22, 2026